**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| The Gray Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR** |
| vs. | ) | **DECLARATORY JUDGMENT** |
| | ) | **(Non-Jury)** |
| Hillary Kierspe, Daniel Duncan, | ) | |
| individually, both individually, and on | ) | |
| behalf of all others similarly situated, and | ) | |
| Wheaton Homeowners Association, Inc., | ) | |
| Invesco, LLC, Metro Properties, Inc., and | ) | |
| Barnett Southern Corporation, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§2201-2202, Plaintiff The Gray Insurance Company, complaining of Defendants, Hillary Kierspe, Daniel Duncan, both individually and on behalf of all others similarly situated, and Wheaton Homeowners Association, Inc., Invesco, LLC, and Barnett Southern Corporation, Inc., respectfully alleges and states as follows:

## INTRODUCTION

1. The Gray Insurance Company ("TGIC") is a foreign insurance company organized and existing under the laws of the State of Louisiana with a principal place of business in Metairie, Louisiana. TGIC is an admitted insurer authorized to operate within the State of South Carolina.

2. Upon information and belief, Defendant Hillary Kierspe (hereinafter "Defendant Kierspe") is a citizen of the State of South Carolina, residing in Aiken County. Defendant Kierspe

is the owner of a piece of real property known as 457 Strutter Trail, Aiken, South Carolina, which is a subject of this action.

3. Upon information and belief, Defendant Daniel Duncan (hereinafter "Defendant Duncan") is a citizen of the State of South Carolina, residing in Aiken County. Defendant Duncan is the owner of a piece of real property known as 224 Bobwhite Drive, Aiken, South Carolina, which is a subject of this action.

4. Upon information and belief, Defendant Wheaton Homeowners Association, Inc. (hereinafter the "Association"), is a non-profit corporation organized and existing under the laws of the State of South Carolina.

5. Upon information and belief, the Association is the property owners' association for the Townhomes of Wheaton subdivision of Trolley Run Station neighborhood including, but not limited to, the common areas and townhomes on Strutter Trail, Bobwhite Drive, and Gobbler Court in Aiken, South Carolina.

6. By virtue of governing documents and the South Carolina Horizontal Property Regime Act, S.C. Code §§27-31-10, et seq., the Association is charged with certain duties, powers, rights, and authority in connection with the common areas and the townhomes located in the Wheaton subdivision.

7. The Association is the owner of the common areas within the Wheaton subdivision.

8. At all times relevant herein, Defendant Kierspe, Defendant Duncan, and the Association are the owners of the common areas and/or townhomes located in the Wheaton subdivision within the Trolley Run Station neighborhood in Aiken, South Carolina.

9. Upon information and belief, Defendant Invesco, LLC (hereinafter, "Invesco"), is a limited liability corporation organized pursuant to the laws of Georgia. Upon information and

belief, Invesco served as the general contractor and developer of the Wheaton development in Aiken, South Carolina.

10. Upon information and belief, Defendant Metro Properties, Inc. (hereinafter, "Metro"), is a corporation organized pursuant to the laws of Georgia.

11. Upon information and belief, Defendant Barnett Southern Corporation, Inc., (hereinafter "Barnett Southern"), is a corporation organized and existing under the laws of the State of Georgia. Upon information and belief, Barnett Southern's work included but was not limited to site prep.

12. The loss and claims at issue in this litigation arise from incidents that occurred in South Carolina. Generally, this action involves the interpretation of an insurance policy entered in South Carolina and that insures interests in South Carolina.

13. Jurisdiction exists because there is complete diversity of citizenship between TGIC and all Defendants, and the amount in controversy exceeds $75,000.00. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L.Ed.2d 383 (1977)). Here, the object of the litigation is TGIC's potential duty to defend and indemnify Invesco for the underlying lawsuit described below. *See id.* (explaining that the object of the litigation was "[the insureds'] request that Allstate defend and/or indemnify them in the Underlying Action"). The value of TGIC's potential duty to defend and indemnify Invesco for the underlying lawsuit, including the potential costs of defending and indemnifying Invesco, exceeds $75,000.00. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

3

14.     Venue is appropriate under 28 U.S.C. § 1391 because the substantial part of the events giving rise to the request for insurance coverage occurred in this District.

15.     The Aiken Division is appropriate pursuant to Local Rule 3.01(A)(1), as a substantial part of the events or omissions giving rise to the claim occurred in, and the underlying lawsuit is currently pending in, Aiken County, South Carolina.

16.     This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57 to determine whether TGIC has a duty to defend and/or indemnify Invesco for all claims related to and arising out of the actions alleged in the underlying lawsuit captioned *Hillary Kierspe, et. al., v. Invesco, LLC, et. al.*, bearing Civil Action No.: 2020-CP-02002183, currently pending in the Court of Common Pleas for Aiken County, South Carolina ("Underlying Lawsuit"). A true and correct copy of the operative complaint in the Underlying Lawsuit is attached as **Exhibit A** and is incorporated herein by reference for the limited purpose of identifying the allegations made in the Underlying Lawsuit.

## FACTUAL BACKGROUND

### I.     Underlying Lawsuit

17.     Defendant Hillary Kierspe, individually and on behalf of all others similarly situated filed the Underlying Lawsuit on November 11, 2020, against Invesco, LLC, Jane Doe #1 -50, ATCO, inc., Hardy Plumbing Company, Inc., and Wagaman's HVAC Sales and Service, Inc., and John Doe # 1-50.

18.     On September 21, 2021, Defendant Hillary Kierspe amended her underlying complaint to add Daniel Duncan and Wheaton Homeowners Association, Inc. as Plaintiffs in the Underlying Lawsuit, and multiple additional defendants to the Underlying Lawsuit inclusive of

4

Barnett Southern Corporation, Inc.  After a second amended complaint was filed on February 28, 2023, a Third Amended Complaint was filed on October 13, 2023. [*See* **Exhibit A**].

19.     Defendants, Hillary Kierspe, Daniel Duncan, both individually and on behalf of all others similarly situated, and Wheaton Homeowners Association, Inc.(hereinafter referred to as "Claimants") are the owners of residences in the Wheaton subdivision of the Trolley Run Station development in Aiken, South Carolina. Claimants brought claims for defective construction against the General Contractor/Developer, Invesco, LLC, its affiliates and owner, as well as claims against the various subcontractors who participated in the development and construction of the project, inclusive of Barnett Southern. Claimants' Third Amended Complaint sets forth causes of action sounding principally in Negligence/Gross Negligence and Breach of Warranty. The Class was certified by the Honorable Clifton B. Newman on February 1, 2022.

20.     Multiple defendants were dismissed from the Underlying Lawsuit, some with and some without prejudice, pursuant to South Carolina Rule of Civil Procedure 41. Plaintiff lacks knowledge of the specific nature and circumstances of the dismissals.

21.     Accordingly, upon information and belief, the only remaining defendants in the Underlying Lawsuit are Invesco, and Metro.

22.     Claimants allege Invesco and Metro, along with other now dismissed "Developer Defendants", were engaged in the business of developing, designing, constructing, repairing and/or selling Claimants' Residences and lots and the neighboring class members' townhouses (and lots) (hereinafter collectively referred to as "Residences") and placing them into the stream of commerce. [*Id.* at ¶ 17].

23.     Claimants allege "Subcontractor Defendants", inclusive of Barnett Southern supplied components, work, and/or participated in the construction of the Residences. [*Id.* at ¶ 18].

5

24.  Claimants allege Barnett Southern's work included but was not limited to site prep. [*Id.* at ¶ 28].

25.  Claimants allege at the time the Certificates of Occupancy were issued, the Residences, common areas, and individual and collective storm drainage systems contained latent building defects.  These latent defects, in combination with storms and other fortuitous events, and regular and repeated exposure to harmful elements, including but not limited to water intrusion, have caused consequential damages to other portions of the Residences and common areas.  [*Id.* at ¶ 70].

26.  Claimants allege Defendants in the Underlying Lawsuit, inclusive of Invesco, Metro, and Barnett Southern, their agents, servants, employees, and/or subcontractors undertook and had a duty to Claimants and the Class to exercise and use due care in the design, construction, and repair of the Residences and common areas in a good workmanlike manner and with suitable materials, in accordance with the applicable building codes, state law, good design, and in conformance with the prevailing industry standards; and that said Defendants breached their duties to Claimants and the Class in a manner that was negligent, careless, reckless, grossly negligent, willful, and wanton in various particulars as delineated in the Underlying Lawsuit attached herewith, and incorporated herein verbatim, as **Exhibit A**.  [*Id.* at ¶ 100 - 102].

27.  Claimants allege Claimant and the Class have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, gross negligence, willfulness, and wantonness of the Defendants, and that if shown said failures were committed with gross negligence, negligence *per se*, and/or reckless disregard for the rights of others, Claimants and the Class are entitled to an award of punitive damages against the Defendants. [*Id.* at ¶ 103 - 104].

28.     Claimants allege the design, construction, repair, and sale of the Residences came with express and implied warranties that the work would be performed in a careful, diligent, and workmanlike manner and that the Residences would be constructed with suitable materials and components and free from latent defects; and the components, used therein, came with implied warranties of fitness, merchantability, workmanship, and a warranty of habitability, and that defendants breached their warranties by constructing and/or repairing the Residences in a defective manner; and that Claimants and the Class have suffered actual and consequential damages as a result.  [*Id.* at ¶ 106 - 109].

29.     Claimants pray for judgement in the Underlying Lawsuit against the Defendants, inclusive of Invesco, Metro, and Barnett Southern, for actual and consequential damages as found by a jury, statutory or punitive damages, reasonable attorneys fees, costs of suit and prejudgment interest, and for such other and further relief at law or equity, both in general and special, as to which Claimants and members of the Class show themselves to be entitled.  [*Id.* at Prayer for Relief ¶ and sub ¶ ¶ 1 and 2].

30.     Claimants reached a settlement with Barnett Southern who was subsequently dismissed from the case with prejudice pursuant to as Stipulation of Dismissal With Prejudice as to Settling Defendants filed on June 13, 2024.

31.     Upon information and belief, Invesco seeks additional insured status under policies of insurance issued to its various sub-contractors inclusive of Barnett Southern, asserting a Contract Agreement Invesco entered with Barnett Southern on February 7, 2011 provided for the same.  The purported contract is incorporated herein by reference and attached as **Exhibit B**.

II.     **The Policy**

32. TGIC issued a commercial general liability policy to Barnett Southern Foster Calvin bearing policy no. XSGL-100025 for policy period May 8, 2021 to May 8, 2024. A true and correct copy of the policy is incorporated herein by reference and attached as **Exhibit C**. Premium information has been redacted.

33. The policy is a "per occurrence" policy providing commercial general liability coverage with limits of $1,000,000 per occurrence, $3,000,000 products-completed operations aggregate, and $3,000,000 general aggregate.

34. The insuring agreement in the policy is set forth in form TGIC CG 00 01 04 13 and states, in part, as follows:

\* \* \*

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
1. **Insuring Agreement**
    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

* * *

**ADDITIONAL INSURED – BLANKET**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Section II – **Who is An Insured** is amended to include as an additional insured:
Any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement, subject to the following provisions.

9

    **a.** Such person or organization is an additional insured only to the extent such coverage is required by written contract or written agreement and only with respect to liability for "bodily injury" , "property damage" or "personal and advertising injury" caused, in whole or in part, by:
    **(1)** Your acts or omissions; or
    **(2)** The acts or omissions of those acting on your behalf,
      in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement:

    **b.** Such person or organization is an additional insured only with respect to liability for "bodily injury" to:
    **(1)** Your "employee", or
    **(2)** An employee of a subcontractor acting on your behalf, but only to the extent:
      **(a)** Coverage for "bodily injury" to your "employee" or an employee of subcontractors acting on your behalf, regardless of whose fault caused such injury, is required by written contract or written agreement, and
      **(b)** Such "bodily injury" arises in the performant of your ongoing operations or "your work" as included in the "products-competed operations hazard" which is the subject of the written contract or written agreement: and

    **c.** Such person or organization is an additional insured for their sole acts or omissions and only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" if:
    **(1)** Coverage for sole acts or omissions of such additional insured is required by written contract or written agreement; and
    **(2)** Such "bodily "injury" , "property damage" or "personal and advertising injury"  results from:
      **(a)** Your ongoing operations; or
      **(b)** "Your work" completed as included in the "products completed operations hazard", performed for the additional insured.
      However, the insurance afforded to such additional insured
        **(i)**    Only applies to the extent permitted by law; and
        **(ii)**    Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

  **\* \* \***

All other terms, conditions, provisions and exclusions of this policy remain the same.

## FOR A FIRST DECLARATION
### (No Coverage Under the Policy for Invesco)

35. The allegations contained in paragraphs 1 through 29 are incorporated as if fully stated

herein.

10

36. Claimants assert Invesco was an additional insured under the policy and, therefore, afforded the coverages provided to additional insureds.

37. Invesco does not qualify as an additional insured because Barnett Southern was not required under any written contract or written agreement to add Invesco as an additional insured.

38. Further, even if a written contract or written agreement existed requiring Invesco's inclusion as an additional insured, because Invesco knew that the "bodily injury" or "property damage" had occurred, in whole or in part, prior to the policy period as evidence by the filing of the Underlying Lawsuit and Invesco's acceptance of service of the Underlying Lawsuit prior to TGIC policy issuing, the insurance under the policy does not apply to Invesco.

39. Accordingly, coverage is not triggered under the policy for Invesco because Invesco does not qualify as an additional insured under the terms of the policy; and/or the insurance under the policy does not apply to Invesco because Invesco had knowledge prior to the policy period that the alleged "bodily injury" or "property damage" had occurred.

40. Because coverage under the policy is not triggered for Invesco, TGIC is not obligated to defend or indemnify Invesco on any claims in the Underlying Lawsuit.

## PRAYER FOR RELIEF

A justiciable controversy exists between the parties in this action arising out of these claims. Therefore, TGIC prays that the Court construe and determine the rights of the parties and declare that:

1. Coverage is not triggered under the policy for Invesco because Invesco does not qualify as an additional insured under the terms of the policy.

11

2.     Coverage is not triggered under the policy for Invesco because Invesco had knowledge prior to the policy period that the alleged "bodily injury" or "property damage" had occurred.

3.     Because coverage is not triggered for Invesco, TGIC is not obligated to defend or indemnify Invesco on any claims in the Underlying Lawsuit, or any other lawsuits arising out of the claims.

4.     Tax the costs of this action against the defendants, or any of them, pursuant to 28 U.S.C. § 2202 and other applicable laws; and

5.     Award all other relief this Court deems just and proper.

**Respectfully submitted,**

_/s/ James C. Cox III_
James C. (Trey) Cox, III (S.C. Fed. No. 7496)
GRIER, COX & CRANSHAW, LLC
P.O. Box 2823
Columbia, SC 29202-2823
(803)731-0030
tcox@griercoxandcranshaw.com

**ATTORNEY FOR PLAINTIFF
THE GRAY INSURANCE COMPANY**

12